Salem

MATTHEW RASH

v.

COMMONWEALTH OF VIRGINIA

No. 0548-88-3

Decided September 5, 1989

COUNSEL

G. Walter Bressler (Bressler and Curcio, on brief), for appellant.

Richard B. Smith, Assistant Attorney General (Mary Sue Terry, Attorney General; Jan F. Hoen, Third-Year Law Student, on brief), for appellee.

OPINION

**COLE, J.**—Matthew Rash, sometimes known as Arvil Mathew Rash, was convicted and sentenced to ten years in prison for

"break[ing] and enter[ing of] the dwelling house of another in the nighttime with intent to commit a felony or any larceny therein." Code § 18.2-89. Rash's appeal presents an issue of first impression in Virginia: whether an unoccupied but furnished dwelling constitutes a "dwelling house" for purposes of Code § 18.2-89 when its last occupant has left with no intent to return and its owners plan to sell it. We conclude that it does not, and therefore find the evidence insufficient to support Rash's conviction.

Rash was indicted for burglary of "the dwelling house of John Powell, 512 Spencer Street." The evidence at trial, however, showed that the house was owned by both Powell and his sister, Margaret Sturgiss, neither of whom had ever lived there. Powell and Mrs. Sturgiss inherited the house and its furnishings from their sister, Virginia Musselwhite, who lived there until her death in January, 1986. Powell's nephew, James Sturgiss, lived in the house from the time of Mrs. Musselwhite's death until November, 1986. The house was unoccupied thereafter until the break-in, which occurred on June 1, 1987.

Powell testified that at the time of the break-in, he and Mrs. Sturgiss were preparing to put the house up for auction. It remained fully furnished, and Powell, who lived nearby, stated that he checked on it periodically and kept the grass mowed.

Rash moved to strike the Commonwealth's evidence on the ground that the house at 512 Spencer Street was not a "dwelling house" within the meaning of Code § 18.2-89. The trial court denied the motion, concluding that "the term dwelling house is describing the nature or intended purpose of the house."

■ Code § 18.2-89 describes an offense identical to common law burglary, save that the element of intent is expanded to include intent to commit a larceny.[1] The statute does not define

---

[1] Code § 18.2-89 reads as follows:

If any person break and enter the dwelling house of another in the nighttime with intent to commit a felony or any larceny therein, he shall be guilty of burglary, punishable as a Class 3 felony; provided, however, that if such person was armed with a deadly weapon at the time of such entry, he shall be guilty of a Class 2 felony.

At common law, burglary was defined as "the breaking and entering of the dwelling house of another in the nighttime with the intent to commit a felony." 3 *Wharton's Criminal Law* § 326 (14th ed. 1980).

dwelling house, though Code § 18.2-78 states:

> No outhouse, not adjoining a dwelling house, nor under the same roof, although within the curtilage thereof, shall be deemed a part of such dwelling house, within the meaning of this chapter, *unless some person usually lodge therein at night.*

Code § 18.2-78 (emphasis added). Code §§ 18.2-89 and 18.2-78 are within the same chapter.

In 1949, our Supreme Court observed:

> Burglary was, at common law, primarily an offense against the security of the habitation, and that is still the general conception of it. A difference is recognized between the crime of wrongfully entering in the night a house where people live and the crime of entering a house where chickens roost.

*Compton v. Commonwealth*, 190 Va. 48, 55, 55 S.E.2d 446, 449 (1949). The theoretical basis of common law burglary was the ancient notion that a man's home was his castle and that he had the right to feel safe therein. This was especially true at night, when he was most vulnerable because he was asleep. 3 *Wharton's Criminal Law* § 326 (1972); 13 Am. Jur. 2d *Burglary* § 2 (1969). Thus, at common law, "dwelling house" was interpreted to mean any structure which human beings regularly used for sleeping. 3 *Wharton's Criminal Law, supra,* § 335.

The theory behind common law burglary remains viable in terms of modern burglary statutes. California's Fifth District Court of Appeals has said:

> Burglary laws are based primarily upon a recognition of the dangers to personal safety created by the usual burglary situation — the danger that the intruder will harm the occupants in attempting to perpetrate the intended crime or to escape and the danger that the occupants will in anger or panic react violently to the invasion, thereby inviting more violence. The laws are primarily designed, not to deter the trespass and the intended crime, which are prohibited by

other laws, so much as to forestall the germination of a situation dangerous to personal safety.

*People v. Statler*, 174 Cal. App. 46, 54, 219 Cal. Rptr. 713, 718 (1985).

 In construing Code § 18.2-89, we are mindful of the following principles of statutory construction:

First and foremost among these principles is that the primary objective of statutory construction is to ascertain and give effect to legislative intent. A related principle is that the plain, obvious, and rational meaning of a statute is always to be preferred to any curious, narrow or strained construction. Finally, because the statute in question is penal in nature, it must be strictly construed against the state and limited in application to cases falling clearly within the language of the statute.

*Turner v. Commonwealth*, 226 Va. 456, 459, 309 S.E.2d 337, 338 (1983)(citations omitted).

 We conclude that in enacting Code § 18.2-89, the legislature intended to preserve the crime of common law burglary as an offense against habitation. Code §§ 18.2-90 and 18.2-91 define other kinds of breaking and entering crimes, including those committed against buildings other than dwelling houses. The focus of Code § 18.2-89 remains the protection of people in their homes at night. Accordingly, we find that the term "dwelling house" in Code § 18.2-89 means a place which human beings regularly use for sleeping.

 Many states which use similar definitions of "dwelling house" for purposes of burglary statutes have considered the effect of an occupant's temporary absence on the character of the house. Most conclude that the house remains a dwelling house so long as the occupant intends to return. The Florida First District Court of Appeal said:

The house must be occupied as a dwelling house, and not merely be suitable or intended for such purpose. The owner or occupant or some member of his family must sleep there. If it is so occupied the temporary absence of the occupant

will not prevent it from being the subject of burglary as a dwelling house; but a house, although furnished as a dwelling house, loses its character as such for the purpose of burglary, if the occupant leaves it without intention to return.

*Tukes v. State*, 346 So. 2d 1056, 1057 (Fla. Dist. Ct. App. 1977); *see also Wallace v. State*, 63 Md. App. 399, 406, 492 A.2d 970, 974 (1985)(apartment is not "dwelling house" because tenants had left with no intent to return); *Gillum v. State*, 468 So. 2d 856, 859 (Miss. 1985)(intention of dweller is material consideration); *People v. Sheirod*, 124 A.D.2d 14, 17, 510 N.Y.S.2d 945, 948 (1987)(whether the absence is temporary is determined by nature of structure, the intent of owner to return, and the conditions of structure); *State v. Ferebee*, 273 S.C. 403, ____, 257 S.E.2d 154, 155 (1979)(no intent to return where former tenant abandoned partially furnished structure); *State v. Berry*, 598 S.W.2d 828, 830 (Tenn. Crim. App. 1980)(intent to return is key). We find the reasoning in these cases persuasive, and therefore hold that a dwelling is no longer a "dwelling house" for purposes of Code § 18.2-89 when its occupants leave it without any intention to return.

The house at 512 Spencer Street was a dwelling house during the years Mrs. Musselwhite lived there and, after her death, during the months that Sturgiss was the occupant. But Sturgiss left the house, and there is no evidence in the record that he intended to return or that the owners of the house, Powell and Mrs. Sturgiss, intended to live there. In fact, they were preparing to sell the house. Under other circumstances, the fact that the house remained fully furnished might be relevant as evidence that the absent occupant intended to return. In this case, however, such an inference is negated by the testimony of the owners.

We hold that the house was not a dwelling house within the meaning of Code § 18.2-89, and the evidence is therefore insufficient to support Rash's conviction under that statute.[2] The conviction is reversed.

*Reversed.*

Koontz, C.J., and Keenan, J., concurred.

[2] We express no opinion whether the Commonwealth may now prosecute the appellant under Code § 18.2-91.