**Salem**
LACY HUGHES JOHNSON
v.
COMMONWEALTH OF VIRGINIA
No. 1069-92-3
Decided May 31, 1994

COUNSEL

Gregory T. Casker (Daniel, Vaughan, Medley & Smitherman, P.C., on brief), for appellant.

H. Elizabeth Shaffer, Assistant Attorney General (Stephen D. Rosenthal, Attorney General on brief), for appellee.

OPINION

KOONTZ, J.—Lacy Hughes Johnson (Johnson) appeals his conviction in a bench trial on a charge of breaking and entering with the intent to commit a misdemeanor, Code § 18.2-92. Johnson asserts that Code § 18.2-92 requires that at the time of entry by an accused, the dwelling must be physically occupied. Johnson

further asserts that the evidence was insufficient to show that he broke and entered the home or that he did so with the requisite intent to commit a misdemeanor. For the reasons that follow, we affirm Johnson's conviction.

## I.

## FACTUAL BACKGROUND

Johnson was indicted on a charge of burglary, Code § 18.2-89, and petit larceny, Code § 18.2-96, by the grand jury of the City of Danville. At the trial of those charges, the judge sitting without a jury found Johnson guilty of the lesser included burglary offense of breaking and entering with the intent to commit a misdemeanor, Code § 18.2-92, and not guilty of petit larceny.

The evidence at trial showed that on September 29, 1991, Brenda Broadnax (Broadnax) was at her apartment in Danville between 8:30 and 9:00 p.m. Johnson and several other men arrived at the apartment and knocked on the door. When Broadnax answered the door, one of the men asked, "Does Carlos live here?" Broadnax, whose son is Carlos Brooks, replied, "Yes, that's my son."

George Johnson (George), whom Broadnax knew as "Little Bee," claimed that Carlos had assaulted his aunt. Broadnax believed that the group intended to fight her son. Broadnax testified that she was nervous and scared because the group was so large. After one of the men said they should "[d]rag [Carlos's] a___ out of there . . . ain't gotta do all this talking," Broadnax asked George to come in alone and discuss the matter. When he refused, she closed the door.

Broadnax testified that the door was immediately kicked open by someone in the group. Broadnax closed the door again and locked it. Broadnax, her husband, and son escaped by another exit. As they drove away, several men from the group chased their car, and one threw a brick which hit the vehicle's rear windshield.

After calling the police and attempting to locate her brothers, who lived nearby, Broadnax returned to her apartment to find the front door broken in and considerable damage done to the home and its contents. A number of personal possessions were missing from the apartment.

Alan Lipscomb (Lipscomb) and Brian Terry (Terry) testified for the Commonwealth. Both men admitted being present at the Broadnax apartment on September 29. Lipscomb testified that Johnson told him that George was going to fight Broadnax's son and invited him to come watch. After Broadnax closed and locked the door, Lipscomb and several others decided to leave. Just as they stepped off the apartment house porch, Lipscomb "heard somthin[g] boom, and the door [to the Broadnax apartment] was open." The group returned to the hall outside the apartment. At that time, Johnson, George, and Terry had already entered the Broadnax apartment. Although Lipscomb saw the others "tearing up stuff," he only saw Johnson stand in the middle of the front room for about thirty seconds to a minute. Lipscomb said that Terry knocked over a television set.

Terry denied that he had entered the home. He testified that "Monty Boo" was the third person to enter the apartment with Johnson and George. Terry was unsure, but thought that "Monty Boo's" real name was Alan Lipscomb. Terry further testified that it was "Monty Boo" who knocked over and broke the television set. Although Terry confirmed that items were taken from the apartment, he did not testify that Johnson performed any acts of vandalism or took anything from the apartment.

After his motion to strike was denied, Johnson called Corey Payne (Payne) as a witness. Payne testified that after "Monty Boo" kicked in the door of the Broadnax apartment, Payne left the area. He testified that Johnson and George immediately left the area, following "behind" him. On cross-examination, Payne admitted that he failed to tell the investigating officer that Johnson and George had not entered the home, stating that the officer never asked specific questions about Johnson.

George "Little Bee" Johnson testified that he did not see who broke in the door of the Broadnax apartment. He further testified that Terry was the only person he saw enter the apartment. When he heard things being broken inside the apartment, George left and Johnson was "[r]ight behind" him and "gave [me] a little push." On cross-examination, George denied that he was the leader of the group and denied that he intended to fight Carlos Brooks. George testified that he and Johnson were on their way to his aunt's house when they encountered the group of men heading to the Broadnax apartment and joined them. He did not recall

talking to Broadnax that night.

The Commonwealth called two rebuttal witnesses. Sandra Featherstone testified that she had seen Johnson in front of the Broadnax apartment, pushing against the front door. It is unclear from the testimony whether she was referring to the door to the apartment or the main entrance of the building. Detective W.I. Holley testified that he asked Payne about Johnson's actions and that Payne did not say Johnson left the area without entering the apartment.

## II.

## BURGLARY AND RELATED CRIMES

██ In this Commonwealth, there are four statutory forms of burglary and related breaking and entering crimes. Code § 18.2-89 defines traditional burglary (the breaking and entering of a dwelling house of another in the nighttime with the intent to commit a felony or any larceny therein). Code §§ 18.2-90 and 18.2-91 expand traditional common law burglary to include entry without breaking in the nighttime or breaking and entering in the daytime of any dwelling house and various other structures with the intent to commit murder, rape or robbery, Code § 18.2-90, or with the intent to commit larceny, assault and battery or any felony other than rape, murder, or robbery. Code § 18.2-91. Code § 18.2-92 further expands traditional common law burglary and provides that: "If any person break and enter a dwelling house *while said dwelling is occupied*, either in the day or night-time, with the intent to commit any misdemeanor except assault and battery or trespass, he shall be guilty of a Class 6 felony." (emphasis added.)[1]

██ A violation of any of the four burglary crimes while armed with a deadly weapon is a class 2 felony. Violation of Code §§ 18.2-89, if unarmed, is a class 3 felony. Violation of Code § 18.2-92 while unarmed is a class 6 felony. Thus, Code § 18.2-92 is a lesser included offense of Code § 18.2-89, the principal distinction being that under Code § 18.2-92 the crime intended upon entry is a non-theft misdemeanor rather than

---

[1] At the time of the indictment and trial that are the subject of this appeal, Code § 18.2-92 read, in pertinent part, "with the intent to commit assault or any other misdemeanor except trespass." This statute was amended to its current form in 1992.

a felony. Other than by judicial extension in some jurisdictions, there was no common law equivalent to Code § 18.2-92.[2] *See* 12A C.J.S. *Burglary* § 2 (1980).

## III.

## NECESSITY OF PHYSICAL OCCUPATION OF THE DWELLING

Johnson asserts that the phrase "while said dwelling is occupied" in Code § 18.2-92 creates an additional element for the offense, namely that at least one occupant must be physically present in the dwelling house at the time of the breaking and entering. We disagree.

We begin our analysis by noting that in a minority of jurisdictions, the necessity of physical presence of an occupant in the dwelling is an element in determining the degree of the crime charged. *See* Annotation, *Burglary of Dwelling—No Occupants*, 20 A.L.R.4th 349, 355-56 (1983). In North Carolina, for example, "[i]f the burglarized dwelling is occupied, the crime is burglary in the first degree; but if it is unoccupied, however momentarily, and whether known to the intruder or not, the crime is burglary in the second degree." *State v. Simons*, 308 S.E.2d 502, 503 (N.C. Ct. App. 1983). In other states, knowledge of actual occupation must be shown. *See, e.g., State v. Stewart*, 859 P.2d 545, 546 (Or. Ct. App. 1993) (burglary in the first degree requires that the accused break and enter with the knowledge that the house is physically occupied at the time); *State v. Ponds*, 850 P.2d 280, 282 (Kan. Ct. App. 1993). In each instance, however, physical presence of an occupant is an element for distinguishing the degree of burglary committed, not for determining commission of the crime.

██ In this Commonwealth, there is no distinction between burglary of a dwelling whose occupants are present and one whose occupants are temporarily absent. *See Rash v. Commonwealth*, 9 Va. App. 22, 383 S.E.2d 749 (1989) (holding that Code § 18.2-89 is applicable to dwelling houses even though the occupants are temporarily absent at the time of the unlawful entry). Our deci-

---

[2] Breaking and entering a dwelling with the intent to commit a non-theft misdemeanor was punishable as a trespass under the common law. Accordingly, Code § 18.2-92 exempts those merely committing trespass from its application.

sion in *Rash* also aids our interpretation of Code § 18.2-92. There, we held that the term "dwelling house" means "a place which human beings regularly use for sleeping" and that a "house remains a dwelling house so long as the occupant intends to return [to it for that purpose]." Thus, we concluded that Code § 18.2-89 is applicable to dwelling houses even though the occupants are temporarily absent at the time of the unlawful entry. *Rash*, 9 Va. App. at 26-27, 383 S.E.2d at 751. This analysis is equally applicable to the provisions of Code § 18.2-92. Accordingly, we hold that the phrase "while said dwelling is occupied" in Code § 18.2-92 is not an element of the crime requiring the physical presence of the occupant at the time of the unlawful entry. Rather, it is language intended by the legislature to emphasize the character of the use of the dwelling as a place of current habitation rather than a dwelling that is temporarily vacant.

■ In so construing the statute, we recognize that "[t]he plain, obvious, and rational meaning of a statute is always preferred to any curious, narrow or strained construction." *Branch v. Commonwealth*, 14 Va. App. 836, 839, 419 S.E.2d 422, 424 (1992). Nonetheless, "[a]lthough penal laws are to be construed strictly [against the Commonwealth], they 'ought not to be construed so strictly as to defeat the obvious intention of the legislature.' " *Willis v. Commonwealth*, 10 Va. App. 430, 441, 393 S.E.2d 405, 411 (1990) (quoting *Huddleston v. United States*, 415 U.S. 814, 831 (1974)). Nor should a statute be construed so that it leads to absurd results. *Branch*, 14 Va. App. at 839, 419 S.E.2d at 424.

To accept Johnson's interpretation of the statute, we would reach the absurd result that where, as in this case, occupants are forced to flee their home by terroristic threats immediately prior to a break-in, no criminal act of burglary occurs in the subsequent breaking and entering of the dwelling to commit acts of vandalism. This interpretation would clearly "defeat the obvious intention of the legislature" in extending the common law protection of habitation against unlawful entry for felonious and larcenous purposes to include instances where the criminal intent was to commit a non-theft misdemeanor.

We further note that where our legislature has desired to create as an element of a crime the contemporaneous physical occupation of a dwelling, it has done so expressly and without reservation. *See* Code § 18.2-279 (using the phrase "dwelling house or other

building *when occupied by one or more persons*" in criminalizing the firing of a firearm or missile within or at a building or dwelling house) (emphasis added). Accordingly, we do not believe that our holding, a view in accord with the majority of other state jurisdictions, *see* Annotation, *Burglary of a Dwelling—No Occupants*, 20 A.L.R.4th at 357-60, renders a curious, narrow or strained construction of Code § 18.2-92.

## IV.

## SUFFICIENCY OF THE EVIDENCE

■ Johnson further asserts that the evidence presented at trial was insufficient to show that he broke and entered the Broadnax apartment, or that if he did so, he had the requisite intent to commit a misdemeanor as required by Code § 18.2-92. We disagree. "On appeal, we review the evidence in the light most favorable to the Commonwealth, granting to it all reasonable inferences fairly deducible therefrom. The judgment of a trial court sitting without a jury is entitled to the same weight as a jury verdict and will not be set aside unless it appears from the evidence that the judgment is plainly wrong or without evidence to support it." *Martin v. Commonwealth*, 4 Va. App. 438, 443, 358 S.E.2d 415, 418 (1987) (citing Code § 8.01-680). " '[T]he finding of the judge, upon the credibility of the witnesses and the weight to be given their evidence, stands on the same footing as the verdict of a jury, and unless that finding is plainly wrong, or without evidence to support it, it cannot be disturbed.' " *Speight v. Commonwealth*, 4 Va. App. 83, 88, 354 S.E.2d 95, 98 (1987) (en banc) (quoting *Lane v. Commonwealth*, 184 Va. 603, 611, 35 S.E.2d 749, 752 (1945)).

Here, the evidence proved that Johnson was present at the scene of the break-in and that he was inside the Broadnax apartment immediately following the break-in. Although Featherstone's testimony was not conclusive as to what door—the main door of the apartment building or the interior apartment door—she saw Johnson push against, the trier of fact was privileged to weigh this evidence and determine whether or not Johnson committed an act of breaking.

Moreover, the Commonwealth was not required to show that Johnson was the principal housebreaker. The evidence was sufficient to show that he acted as a principal in the second degree.

*Rollston v. Commonwealth*, 11 Va. App. 535, 538, 399 S.E.2d 823, 825 (1991). Johnson's mere presence does not establish participation in the break-in; however, other circumstances surrounding his presence and his subsequent entry into the dwelling are sufficient to establish that he shared the criminal intent to break into the apartment. *See id.* Accordingly, the trial judge could have determined either that Jonson was the housebreaker or that by his presence and actions he aided and abetted the housebreaker. In either case, the necessary elements of breaking and entering were established by the Commonwealth's evidence, and we cannot say that the trial court's finding that those elements were present was plainly wrong.

■ Similarly, the required intent to commit some misdemeanor could be inferred by Johnson's participation either as the principal housebreaker or as a principal in the second degree to the breaking and his subsequent entry into the home. The Supreme Court has held that presence during the commission of a crime in connection with other circumstances showing intent to aid and abet the commission of that crime supports a fact finder's determination that a criminal intent existed. *See Foster v. Commonwealth*, 179 Va. 96, 100, 18 S.E.2d 314, 316 (1942). Johnson's presence in the midst of various acts of vandalism and larceny is consistent with the trial court's finding that he possessed a guilty intent upon entry into the home. We cannot say that the trial court's finding that Johnson possessed the necessary intent was clearly wrong.

For these reasons, the judgment appealed from is affirmed.

*Affirmed.*

Willis, J., concurred.

Benton, J., dissenting.

This is a case that requires construction of a criminal statute. The statute reads as follows:

If any person break and enter a dwelling house *while said dwelling is occupied*, either in the day or nighttime, with the intent to commit assault or any other misdemeanor except trespass, he shall be guilty of a Class 6 felony; provided, however, that if such person was armed with a deadly weapon at the time of such entry, he shall be guilty of a

Class 2 felony.

Code § 18.2-92 (emphasis added).

"[B]ecause the statute in question is penal in nature, it must be strictly construed against the state and limited in application to cases falling clearly within the language of the statute." *Turner v. Commonwealth*, 226 Va. 456, 459, 309 S.E.2d 337, 338 (1983). Furthermore, rules of statutory construction also suggest as follows:

> Where possible, a statute should be construed with a view toward harmonizing it with other statutes. Because the Code of Virginia is one body of law, other Code sections using the same phraseology may be consulted in determining the meaning of a statute.

*Branch v. Commonwealth*, 14 Va. App. 836, 839, 419 S.E.2d 422, 425 (1992) (citations omitted). Moreover, the rule is well established that "statutes relating to the same subject should be read and construed together." *Turner*, 226 Va. at 461, 309 S.E.2d at 339.

In *Rash v. Commonwealth*, 9 Va. App. 22, 383 S.E.2d 749 (1989), this Court defined the term "dwelling house" as it is used in the common law and in Code § 18.2-89.[3] The Court held "that the term 'dwelling house' in Code § 18.2-89 means a place which human beings regularly use for sleeping." *Id.* at 26, 383 S.E.2d at 751. Thus, the Court reasoned that a "house remains a dwelling house so long as the occupant intends to return." *Id.* Because all dwelling houses must have an "occupant" in order to satisfy the definition of "dwelling house," all dwelling houses are necessarily "occupied" in the sense that they are regular residences.

Logic and the rules of statutory construction dictate that the term "dwelling house," as defined for purposes of Code § 18.2-89, has the same meaning when used in Code § 18.2-92, a related

---

[3] Code § 18.2-89 reads as follows:

If any person break and enter the dwelling house of another in the nighttime with intent to commit a felony or any larceny therein, he shall be guilty of burglary, punishable as a Class 3 felony; provided, however, that if such person was armed with a deadly weapon at the time of such entry, he shall be guilty of a Class 2 felony.

statutory burglary offense. Code § 18.2-92 prohibits any person from "break[ing] and enter[ing] a dwelling house while said dwelling is occupied." The word "occupied" is a modifier which, in the context of the statute, can only connote either an actual physical presence in the dwelling or regular and usual use of the dwelling by persons as a residence. *See Webster's Third New International Dictionary*, Unabridged (1981). If in interpreting the statute, we use the term "dwelling house" in the manner consistent with the holding in *Rash* (i.e., a residence that regularly and usually has an occupant), the word "occupied" in Code § 18.2-92 must be limited to actual physical presence. To do otherwise is to create a redundancy or to read out of the statute the word "occupied." When interpreting Code § 18.2-92, we may not do either because we "have a duty to give full force and effect to every word [of the statutes]." *Foote v. Commonwealth*, 11 Va. App. 61, 65, 396 S.E.2d 851, 854 (1990).

The evidence did not prove that Johnson entered the dwelling house "while said dwelling [was] occupied." No evidence proved that anyone was present within the dwelling. Indeed, the evidence proved that the three people who were in the apartment locked the door, got into an automobile, and drove away. After they left the apartment, Johnson and his companions entered the apartment. Accordingly, I would hold that the dwelling was not occupied and reverse the conviction.