COURT OF APPEALS OF VIRGINIA


Present: Chief Judge Fitzpatrick, Judge Annunziata and
         Senior Judge Coleman
Argued at Richmond, Virginia


RASHEEN MALONE, S/K/A
 RASHEEN S. MALONE
                                    MEMORANDUM OPINION* BY
v.   Record No. 2798-00-1           JUDGE ROSEMARIE ANNUNZIATA
                                         FEBRUARY 19, 2002
COMMONWEALTH OF VIRGINIA


          FROM THE CIRCUIT COURT OF SOUTHAMPTON COUNTY
                    E. Everett Bagnell, Judge

          Carson E. Saunders, Jr. (Vincent Law Firm, on
          brief), for appellant.

          Leah A. Darron, Assistant Attorney General
          (Randolph A. Beales, Acting Attorney General;
          Shelly R. James, Assistant Attorney General,
          on brief), for appellee.


     Rasheen Malone was convicted of robbery in violation of

Code § 18.2-58, and use of a firearm in the commission of

robbery, in violation of Code § 18.2-53.1. He contends on

appeal that the evidence is not sufficient to support either

conviction. For the reasons that follow, we affirm his

convictions.

                         BACKGROUND

     On appeal, we state the evidence and reasonable inferences

that may be drawn in the light most favorable to the party

_____

     * Pursuant to Code § 17.1-413, this opinion is not
designated for publication.

prevailing below, the Commonwealth.  Cooper v. Commonwealth, 31 Va. App. 643, 646, 525 S.E.2d 72, 73 (2000).  On February 24, 2000, Rasheen Malone and Antonio Turner, residents of Newsoms, Virginia, traveled to Boykins, Virginia.  At about 3:30 p.m., while Wilroy Williams was filling his 1985 Ford pickup truck with gas at a Mobil station, Turner and Malone approached the vehicle.  Turner asked Williams to give them a ride to the town of Newsoms.  Williams refused.

Williams went into the store to pay for his gas and, upon returning to the truck, he found the two men were still standing there.  Turner again asked for a ride, explaining that he needed to get to his child's home as quickly as possible because the child was sick.  Williams initially refused, but then changed his mind.  Turner got into the passenger seat while Malone sat in the bed of the truck at the "wheel well" on the passenger side.  Williams took the route toward Newsoms suggested by Turner.

En route, Turner pulled out a gun and said to Williams "[g]ive me your pocketbook."  Williams described the weapon as a black, .38 caliber gun.  He stated it was not a revolver.  Rather than give Turner his wallet, Williams put the truck in neutral as he approached a stop sign, and jumped from the vehicle.  He ran to a school bus that was approaching from a cross street and observed Turner drive his truck away with Malone in the passenger seat.

-

Williams told police Malone was wearing a red shirt and that Turner had gold teeth, accurately describing features of both men.  He also identified both at trial as the men who rode in his truck and drove it away.

The police found the truck parked by the road on the other side of Newsoms.  Tracks of two people walking away from the truck and crossing an adjacent field were also found in the mud beside the truck.  The footprints were the only ones in the area not made by the police.  Detective Richard Morris made casts of the footprints, which were sent to the laboratory for comparison to shoes belonging to Malone and Turner.  The shoes matched the cast footprints.

Police found a live .380 bullet in Malone's pocket at the time of his arrest.  After being read his Miranda rights, which he waived, Malone told police he saw Turner on February 24, 2000, for about 20 minutes to talk about a "Play Station."  He claimed that just after 3:00 p.m., he got on a school bus back to Newsoms.  The school bus driver, Annie Cross, testified that Malone did not ride the bus that day, and Anne West testified that Malone and Turner came to her house in Newsoms before the school bus arrived.

Turner testified that he had been with Malone since 10:00 a.m. that day, that Malone had a .380 caliber gun in his possession, and that they had gotten a ride to Boykins together.  Malone claimed he met up with Turner while walking towards a

-

Mobil gas station in Boykins. He testified that he could not recall how he had gotten to Boykins but stated that he had not come with Turner.

Turner also testified that he and Malone got a ride from Williams at the Mobil gas station. He claimed that Williams jumped from the truck for no apparent reason when they reached the stop sign, that he then jumped into the driver's seat, told Malone nothing was wrong, and quickly drove the truck away.

At trial, Malone recanted his initial statement to the police and admitted that he was with Turner on February 24 and that he got a ride from Williams. He claimed he did not know a robbery had taken place when Turner drove off with the truck, although he knew that Williams had not given Turner permission to take the truck. He attributed his earlier lie to police to fear and to the fact that the police wanted him to "say that [Turner] did it," although he asserted that when the police questioned him he did not know he or Turner were being charged with a robbery.

### ANALYSIS

When the sufficiency of the evidence is challenged on appeal, "[w]e view the evidence in the light most favorable to the Commonwealth, granting to it all reasonable inferences fairly deducible from the evidence." Cooper, 31 Va. App. at 646, 525 S.E.2d at 73. The appellate court must, therefore, "discard the evidence of the accused in conflict with that of

-

the Commonwealth, and regard as true all the credible evidence favorable to the Commonwealth and all fair inferences that may be drawn" from the credible evidence.  Watkins v. Commonwealth, 26 Va. App. 335, 348, 494 S.E.2d 859, 866 (1998).  The credibility of the witnesses and the weight of the evidence are matters to be determined solely by the trier of fact.  Swanson v. Commonwealth, 8 Va. App. 376, 378-79, 382 S.E.2d 258, 259 (1989).  Furthermore, the decision of the trial court will not be disturbed unless plainly wrong or without evidence to support it.  McGee v. Commonwealth, 25 Va. App. 193, 197-98, 487 S.E.2d 259, 261 (1997) (en banc).  "If there is evidence to support the conviction," this Court will not substitute its judgment for that of the trier of fact, even were our opinion to differ. Commonwealth v. Presley, 256 Va. 465, 466, 507 S.E.2d 72, 72 (1998).

Malone was convicted of robbery and use of a firearm to commit robbery as a principal in the second degree.  To support a finding of guilt on this ground, the Commonwealth must prove that Malone was "present, aiding and abetting, and intended his or her words, gestures, signals, or actions to in some way encourage, advise, urge, or . . . help the person committing the crime to commit it."  Bass v. Commonwealth, 31 Va. App. 373, 389, 523 S.E.2d 534, 542 (2000) (internal quotations and citations omitted).  An aider and abettor "must be guilty of some overt act, or . . . must share the criminal intent of the

-

principal." Rollston v. Commonwealth, 11 Va. App. 535, 539, 399 S.E.2d 823, 825 (1991) (internal quotations and citations omitted). While presence alone during the commission of a crime is not sufficient to establish a defendant is a principal in the second degree, see Triplett v. Commonwealth, 141 Va. 577, 585, 127 S.E. 486, 489 (1925), an observer's failure to disapprove or object to the commission of a crime "is evidence from which, in connection with other circumstances . . . that he assented thereto, lent to it his countenance and approval, and was thereby aiding and abetting the same." Foster v. Commonwealth, 179 Va. 96, 100, 18 S.E.2d 314, 316 (1942); accord Johnson v. Commonwealth, 18 Va. App. 441, 449, 444 S.E.2d 559, 564 (1994) (finding that presence during the commission of a crime, combined with other circumstances, "supports a fact finder's determination that a criminal intent existed").

Malone contends that the Commonwealth proved nothing more than his presence during the commission of the robbery. We disagree.

The evidence at trial and the inferences deducible therefrom sufficiently demonstrate that Malone acted in concert with Turner. First, it can be inferred from the evidence that Malone had been with Turner for several hours before seeing Williams and, therefore, knew that Turner fabricated the "emergency" underlying his request for a ride. Second, physical evidence tied Malone to the perpetration and planning of the

-

robbery.  The gun Malone had on his person the day of the robbery and the bullet found in his pocket just two hours after the robbery were consistent with the gun used in the robbery. Third, Malone's act of getting into the cab of the vehicle when Williams jumped from the truck, knowing Turner did not have permission to take the truck, is evidence that he aided the commission of the robbery and shared Turner's criminal intent. Fourth, Malone's flight after abandoning the vehicle by the side of the road is evidence of guilt.  See Murray v. Commonwealth, 210 Va. 282, 283, 170 S.E.2d 3, 4 (1969) (holding that trier of fact may consider flight as a factor tending to prove guilt). Finally, the trier of fact could consider that Malone lied to the police and disclaimed all responsibility at trial "to conceal his guilt and thus [is] evidence of his guilt." Rollston, 11 Va. App. at 548, 399 S.E.2d at 831; accord Wright v. West, 505 U.S. 277, 296 (1992) (trier of fact may consider perjured testimony as affirmative evidence of guilt).

While no single piece of evidence is sufficient to sustain Malone's conviction, the totality of the evidence proves beyond a reasonable doubt that Malone aided and abetted Turner in the commission of the robbery and the use of a firearm in its commission.  See Stamper v. Commonwealth, 220 Va. 260, 273, 257 S.E.2d 808, 818 (1979); cf. Hampton v. Commonwealth, 32 Va. App. 644, 651-52, 529 S.E.2d 843, 847 (2000) (reversing defendant's conviction as principal in the second degree where evidence

-

consisted only of defendant's "not leaving the vehicle and moving into the front seat," as the driver stole the vehicle).

We, therefore, affirm his convictions.

Affirmed.
