COURT OF APPEALS OF VIRGINIA


Present: Judges Benton, Willis and Clements
Argued at Salem, Virginia


PAUL DWAIN BARTS

MEMORANDUM OPINION[*] BY

v.    Record No. 0556-01-3      JUDGE JERE M. H. WILLIS, JR.
                                        FEBRUARY 19, 2002
COMMONWEALTH OF VIRGINIA


FROM THE CIRCUIT COURT OF THE CITY OF DANVILLE
James F. Ingram, Judge

Joseph R. Winston, Special Appellate Counsel
(Public Defender Commission, on briefs), for
appellant.

Eugene Murphy, Assistant Attorney General
(Randolph A. Beales, Attorney General, on
brief), for appellee.


On appeal from his convictions in a bench trial of burglary,

in violation of Code § 18.2-89, and petit larceny, in violation of

Code § 18.2-96, Paul Dwain Barts contends that the trial court

erred in finding the house he broke and entered was a dwelling

house for the purposes of Code § 18.2-89.  We reverse the burglary

conviction and order the burglary charge dismissed.[1]

I.   BACKGROUND

On October 20, 2000, Barts broke and entered a house owned by

Edward Taylor at 114 Carrollton Road in Danville.  Taylor had

---

* Pursuant to Code § 17.1-413, this opinion is not
designated for publication.

[1] Barts has not challenged his petit larceny conviction.

lived there with his wife and daughter until April 2000, when he and his wife moved to Rocky Mount. Taylor's daughter remained in the home until July 2000. When the home was vacated, Taylor began renovating and remodeling it.

At approximately 7:00 p.m. on October 19, 2000, Taylor left the premises. He turned off the electricity and locked the house. At approximately 6:15 a.m. the following morning, a neighbor, hearing noises, looked out the window and saw someone removing a refrigerator. The police responded and arrested Barts.

Barts was convicted of burglary and petit larceny. He was sentenced to seven years imprisonment for burglary and twelve months imprisonment plus a one hundred dollar fine for petit larceny. The court suspended the seven years and twelve months imprisonment upon condition that Barts serve three years and six months in the penitentiary.

## II. Analysis

Barts contends that the trial court erred in finding that the structure he broke and entered was a dwelling house. He argues that the house was no longer a dwelling house for purposes of Code § 18.2-89. We agree.

The term "dwelling house" is not defined in Code § 18.2-89. However, we addressed what constitutes a "dwelling house" under the code in Rash v. Commonwealth, 9 Va. App. 22, 383 S.E.2d 749 (1989). Rash was convicted of burglary under Code § 18.2-89 for breaking and entering the dwelling house of John Powell. The

-

evidence disclosed that the house was owned by Powell and his sister, neither of whom had ever lived there. Powell's nephew had lived in the house for a brief period, but, at the time of the break-in, the house was unoccupied. Id. at 24, 383 S.E.2d at 750.

Powell testified that at the time of the break-in, he and his sister were preparing to put the house up for auction. It remained fully furnished. He checked on the house periodically and kept the grass mowed. We reversed Rash's burglary conviction, holding that the house was not a "dwelling house" within the meaning of Code § 18.2-89. Id. Noting that burglary is "primarily an offense against the security of habitation, id. at 25, 383 S.E.2d at 751, we held that "the term 'dwelling house' in Code § 18.2-89 means a place which human beings regularly use for sleeping." Id. at 26, 383 S.E.2d at 751. As such, a "dwelling is no longer a 'dwelling house' for the purposes of Code § 18.2-89 when its occupants leave it without any intention to return." Id. at 27, 383 S.E.2d at 752.

> [Powell's nephew] left the house, and there is no evidence in the record that he intended to return or that the owners of the house . . . intended to live there. In fact, they were preparing to sell the house. Under other circumstances, the fact that the house remained fully furnished might be relevant as evidence that the absent occupant intended to return. In this case, however, such an inference is negated by the testimony of the owners.

Id.

-

As in Rash, the evidence in this case fails to support the trial court's finding that Taylor intended to return to the house. Taylor testified to the following on cross-examination:

> [Defense counsel]: All right. In fact, the house sat vacant from the end of July until even today as it is still being worked on, right?
>
> A: Yes sir.
>
> Q: You've just been storing your stuff there . . . you're getting it ready to decide what you are going to do with it, right?
>
> A: Well, possibly, we are going to move back in it.
>
> Q: Possibly, you don't know yet?
>
> A: That's true.

On re-direct, Taylor testified:

> [Prosecutor]: Mr. Taylor, when you . . . so, at this point, you don't know whether or not you are going to return to that house or not?
>
> A: At this point in time, no. I will either rent the house or sell it.

Taylor's testimony discloses no intent to return to the house. The fact that he planned to rent or sell the house, as in Rash, negates an inference that the possessions left in the house evinced an intent to return. Therefore, the house did not fall within the meaning of "dwelling house" under the statute when Barts broke and entered.

-

The judgment of the trial court on the burglary charge is reversed, and the burglary charge is ordered dismissed.

<u>Reversed and dismissed.</u>