COURT OF APPEALS OF VIRGINIA


Present:  Judges Baker, Annunziata and Senior Judge Cole
Argued at Richmond, Virginia


WILLIAM I. MARABLE
                                            OPINION BY
v.         Record No. 0361-97-2      JUDGE JOSEPH E. BAKER
                                          JUNE 16, 1998
COMMONWEALTH OF VIRGINIA


             FROM THE CIRCUIT COURT OF LUNENBURG COUNTY
                      William L. Wellons, Judge

         Joseph M. Teefey, Jr., Assistant Public
         Defender (Office of the Public Defender, on
         brief), for appellant.

         Thomas D. Bagwell, Assistant Attorney General
         (Richard Cullen, Attorney General, on brief),
         for appellee.


     William I. Marable (appellant) appeals from his bench trial

conviction by the Circuit Court of Lunenburg County (trial court)

for burning an occupied dwelling in violation of Code

§ 18.2-77(A).  Appellant contends the evidence was insufficient

to prove (1) that the burning was intentional and (2) that he was

the criminal agent.  He also contends the evidence was

insufficient to prove that the burned building was "occupied" and

that, as a consequence he was subject, at most, to the lesser

punishment contained in Code § 18.2-77(B) for the burning of an

unoccupied dwelling.  Finding no error, we affirm the judgment of

the trial court.

     Stated in the light most favorable to the Commonwealth,

granting to it all reasonable inferences fairly deducible

therefrom, the evidence discloses that appellant lived with

Gloria Folks in her rented residence in Chase City, Virginia. After an argument on August 16, 1996, Folks told him to leave. Appellant stayed the night of August 16 and left the morning of August 17, but returned, intoxicated, around 8:00 p.m. that evening. Folks refused appellant's demand for food and again told him to leave. While cursing her, appellant told Folks that he was "staying right here," was "going to eat," and that there was "nothing [she] can do about it." When Folks pushed appellant to try to make him leave, he became violent and said, "I'm tired of you and your sister and your friend. . . . I'm going to kill all of you m-fs." When Folks attempted to leave, appellant tried to force her back into the house. She broke free and ran into the house. Appellant followed, assaulted Folks, and then threatened to kill her and burn her house.

Folks managed to escape and drove to appellant's mother's house to call the police. Denise Jones, Folks' next door neighbor, observed the confrontation and Folks' departure. Within three or four seconds of Folks' departure, Jones saw fire coming from a window of Folks' house. When informed by Jones that the house was afire, Folks returned and found appellant sitting on his car watching her house burn. Appellant was yelling, "[L]et it burn," and said, "If I can't live in it, ain't nobody going to live in it." In addition, when fire fighter Whitaker arrived, appellant cursed him and said, "Let it burn."

Appellant admitted to Deputy Sheriff Stokes that he caused

the fire but claimed it was accidental.  Appellant said:

> I lit a cigarette and dropped a match on the gas that was on the porch.  There were two containers of gas on the porch.  I was putting gas in the lawn mower, when I dropped a match . . . and it caught fire. . . .

> Gloria Folks and I had an argument.  She slapped and choked me.  I grabbed her and ripped her shirt.  She left and went down the road.  I tried to stop her, but could not.  I said, I'd better finish cutting the grass.  And that's when I lit . . . the cigarette and dropped the match on the porch.  And that's when the gas caught on fire.

State police arson expert Danny Beamon testified that the burn pattern disclosed the fire started inside the house in a loveseat and that the fire was very hot and spread rapidly, shattering windows.  He eliminated as a cause any electrical malfunction, lightning, or lawn mower gas as sources.  Beamon said the only fire outside the house originated from inside.

Under familiar principles of appellate review, we examine the evidence in the light most favorable to the Commonwealth.  See Martin v. Commonwealth, 4 Va. App. 438, 443, 358 S.E.2d 415, 418 (1987).  The credibility of a witness and the inferences to be drawn from proven facts are matters solely for the fact finder's determination.  See Long v. Commonwealth, 8 Va. App. 194, 199, 379 S.E.2d 473, 476 (1989).  In its role of judging witness credibility, the fact finder is entitled to disbelieve the self-serving testimony of the accused and to conclude that the accused is lying to conceal his guilt.  See Speight v. Commonwealth, 4 Va. App. 83, 88, 354 S.E.2d 95, 98 (1987) (en

banc).

"Circumstantial evidence is as competent and is entitled to as much weight as direct evidence, provided it is sufficiently convincing to exclude every reasonable hypothesis except that of guilt." Coleman v. Commonwealth, 226 Va. 31, 53, 307 S.E.2d 864, 876 (1983). "[T]he Commonwealth need only exclude reasonable hypotheses of innocence that flow from the evidence, not those that spring from the imagination of the defendant." Hamilton v. Commonwealth, 16 Va. App. 751, 755, 433 S.E.2d 27, 29 (1993). Whether a hypothesis of innocence is reasonable is a question of fact. See Cantrell v. Commonwealth, 7 Va. App. 269, 290, 373 S.E.2d 328, 339 (1988).

## I. Proof of Arson and Criminal Agency

The Commonwealth had the burden to prove beyond a reasonable doubt both that the fire was incendiary and that the accused was the criminal agent. See Jones v. Commonwealth, 103 Va. 1012, 1019, 44 S.E. 663, 666 (1905). Although fires are presumed to be accidental, that presumption is rebuttable. See Knight v. Commonwealth, 225 Va. 85, 89, 300 S.E.2d 600, 601-02 (1983). Here, as in Knight, the presumption of accident was clearly negated by the expert testimony of State Police Officer Beamon. No evidence proved that any potential arsonist other than appellant was present when the fire broke out. With "the testimony of a qualified expert . . . negat[ing] every reasonable possibility that a fire was of accidental origin," the fact

finder was entitled to reject any conflicting evidence relative to accidental cause.  See Cook v. Commonwealth, 226 Va. 427, 432, 309 S.E.2d 325, 328 (1983).

Beamon's testimony, coupled with other evidence, rebutted appellant's claim that the burning was accidental and showed arson as its cause.  Appellant was angry with Folks, had threatened to burn the house just minutes before Folks fled, and said that no one would live in the house if he could not.  He told fire fighters to "let it burn."  Appellant admitted starting the fire but claimed it started accidentally outside on the deck.  However, based on evidence that the fire started inside the house in the loveseat rather than outside on the deck, the court was entitled to conclude that appellant also lied when he said the fire was accidental.  The evidence, including appellant's lack of veracity, effectively overcame the presumption of accident and is sufficient to support the fact finder's conclusion that appellant was the criminal agent.

## II.  Occupancy

The indictment charged that, "on or about the 17th day of August, 1996, in the County of Lunenburg, Virginia, [William Marable] did unlawfully, feloniously and maliciously burn the occupied dwelling house of Gloria Fowlkes [sic], against the peace and dignity of the Commonwealth of Virginia," in violation of Code § 18.2-77, which proscribes arson as a felony.  Appellant contends Code § 18.2-77(B) reduces the penalty for arson when the

dwelling is unoccupied and that "the Commonwealth's own evidence" proved "there wasn't anybody in that house." The record proved that Folks and appellant lived in the house, which Folks rented from her brother-in-law. Folks fled the residence immediately prior to the fire, but no direct evidence proved whether anyone else was present in the house when the fire was set.

The portion of Code § 18.2-77(A) relevant to the indictment provides that if "any person maliciously (i) burns . . . or causes to be burned . . . any dwelling house . . . or other house in which persons usually dwell[,] . . . he shall be guilty of a felony, punishable by imprisonment for life or for any period not less than five years and . . . a fine of not more than $100,000." Subsection (B) of Code § 18.2-77 provides that "[a]ny such burning or destruction when the building or other place mentioned in subsection A is unoccupied, shall be punishable as a Class 4 felony."

Appellant asks us to construe "occupied" and "unoccupied" as used in Code § 18.2-77 to require proof that a person was physically on the premises burned before an accused may be found guilty under subsection (A) of the statute. We decline the request. "When the legislature has spoken plainly, it is not the function of courts to change or amend its enactments under the guise of construing them." Winston v. City of Richmond, 196 Va. 403, 407-08, 83 S.E.2d 728, 731 (1954). "'The province of construction lies wholly within the domain of ambiguity,'" and

- 6 -

that which is plain needs no interpretation. Almond v. Gilmer, 188 Va. 1, 14, 49 S.E.2d 431, 439 (1948) (quoting Hamilton v. Rathbone, 175 U.S. 414, 421 (1899)). Webster's New International Dictionary 2505 (3d ed. 1986) (emphasis added), defines "unoccupied" as "not occupied by inhabitants" or "relating to . . . premises on which no one is living although the furniture and fixtures have not been removed" and suggests comparison with "vacant." When pertaining to "premises," vacant means "premises which are not lived in and from which the furniture and fixtures have been removed." Id. at 2527. Black's Law Dictionary 1379 (5th ed. 1979), states that the temporary absence of occupants of a dwelling house does not render the dwelling "unoccupied." This same principle applied at common law. See Davis v. Commonwealth, 16 Va. App. 6, 8, 427 S.E.2d 441, 442 (1993) (citing State v. Gulley, 266 S.E.2d 8, 8 (N.C. Ct. App. 1980)).

Our holding in Davis further shows the clear meaning of the word "unoccupied." In Davis, this Court considered an earlier version of Code § 18.2-77. The earlier version of the statute reduced arson from a Class 2 to a Class 3 felony if the dwelling burned was "temporarily unoccupied." We held that when the dwelling was burned at a time when all its occupants were out of the house merely to rent a movie, the words "temporarily unoccupied" did not exempt the arsonist from being punished as a Class 2 felon. If the legislature had intended "unoccupied" to mean "when no person is in the building," we concluded, it would

- 7 -

have said so as it did when enacting Code §§ 18.2-79 and 18.2-80. See 16 Va. App. at 7-8, 427 S.E.2d at 442.

Appellant argues that, because the legislature subsequently deleted the word "temporarily," we should construe Code § 18.2-77 to require proof that one or more people were physically present in the dwelling at the time of the burning. We disagree. In Johnson v. Commonwealth, 18 Va. App. 441, 446-47, 444 S.E.2d 559, 562 (1994), we said that the term "dwelling house" means a place which human beings regularly use for sleeping even though the occupants are temporarily absent, see Rash v. Commonwealth, 9 Va. App. 22, 26-27, 383 S.E.2d 749, 751 (1989), and that the legislature's use of the adjective "occupied" to modify "dwelling house" did not require contemporaneous physical occupation. See Johnson, 18 Va. App. at 447, 444 S.E.2d at 562. Although Johnson involved an interpretation of Code § 18.2-92, a breaking and entering statute, we find no reason to distinguish between the two statutes. Therefore, we hold that the legislature's use of the term "unoccupied" was not intended to reduce the punishment for violation of Code § 18.2-77 where the occupant or occupants are merely temporarily absent but continue to reside there. The record here proved that the burned premises was a dwelling house "occupied" by Folks within the meaning of the statute and that her absence was temporary at most. For these reasons, the evidence is sufficient to support appellant's conviction under Code § 18.2-77(A).

Accordingly, the judgment of the trial court is affirmed.

<u>Affirmed.</u>