COURT OF APPEALS OF VIRGINIA


Present:  Judges Benton, Humphreys and Retired Judge Olitsky[*]
Argued at Richmond, Virginia


PHILLYSTENE TUCKER JEFFERSON

                                    MEMORANDUM OPINION[**] BY
v.    Record No. 2706-98-2         JUDGE ROBERT J. HUMPHREYS
                                         AUGUST 22, 2000
COMMONWEALTH OF VIRGINIA

            FROM THE CIRCUIT COURT OF NOTTOWAY COUNTY
                    Thomas V. Warren, Judge

         Wade A. Jacobson for appellant.

         Steven A. Witmer, Assistant Attorney General
         (Mark L. Earley, Attorney General, on
         brief), for appellee.


     Phillystene Tucker Jefferson appeals her conviction in a

bench trial for malicious burning of a structure in violation of

Virginia Code § 18.2-80.  Jefferson claims that the trial court

erred in finding the evidence sufficient as a matter of law to

support the conviction.  We disagree and for the reasons that

follow, affirm her conviction.

                       I.  Background

     Jefferson and Berkley Haskins have a fourteen-year-old

daughter but have never been married.  The relationship between

---

     [*] Retired Judge Norman Olitsky took part in the
consideration of this case by designation pursuant to Code
§ 17.1-400, recodifying Code § 17-116.01.

     [**] Pursuant to Code § 17.1-413, recodifying Code
§ 17-116.101, this opinion is not designated for publication.

Jefferson and Haskins has been contentious.  In particular, they have had disagreements regarding their daughter and various custody issues.

During the early morning hours of April 18, 1998, at approximately 2:00 a.m., Haskins, who had custody of the daughter by court order, telephoned Jefferson to inform her that he had had the daughter arrested the previous day.  On April 21, 1998 and April 22, 1998, Jefferson made a number of telephone calls to Haskins' home asking to speak with the daughter.  Haskins testified that when Jefferson spoke to the daughter, the daughter told him she didn't want to speak to Jefferson and handed him the phone.  Haskins then hung up on Jefferson because "they couldn't talk with no sense."

Haskins testified that Jefferson and a male friend, Joe Todd, came to his home about 25 minutes later.  Haskins was outside when they drove up.  After Todd and Jefferson got out of the car, Jefferson and Haskins began to argue.  Haskins asked Todd to take Jefferson out of his yard and threatened to call the police.  Todd pleaded with Jefferson to leave, but Jefferson said she had visitation rights and refused to leave.  Todd then drove away.

At that point, Haskins went into his house and locked the door.  He testified that he went to a window where he could see Jefferson and watched her through the blinds.  Jefferson continued to yell for her daughter and started smoking a

-

cigarette.  She then went to Haskins' car shed and went inside, where Haskins could no longer see Jefferson.  He testified that she stayed in the shed for approximately a minute to a minute and a half.  She then exited the shed, still smoking, and used something she had in her hand to put a dent in a car that was sitting in Haskins' driveway.  Jefferson walked away from the house, looked back when she was 100 yards away, and disappeared into some nearby woods.  Approximately ten minutes later, Haskins was outside and saw the shed on fire.  Haskins received approximately $11,000 from his insurer for the value of the shed and its contents.

Jefferson testified that she did not go into the car shed but only went to the front edge of the shed, where she could urinate out of sight.  She testified that she dropped a cigarette butt on the ground, stepped on it just before she urinated, and then lit another cigarette just after leaving Haskins' property.

Special Agent Harold Adams of the Virginia State Police, who specialized in arson investigations, investigated the shed fire.  He testified that he concluded the fire had started in the rear portion of the shed where a hay bale was located.  He further testified that the fire could not have been started by a cigarette butt and that he was unable to determine whether the gasoline in the several lawn mowers that were in the shed had started the fire or accelerated the fire.

-

## II.  Analysis

"Where the sufficiency of the evidence is challenged after conviction, it is our duty to consider it in the light most favorable to the Commonwealth and give it all reasonable inferences fairly deducible therefrom.  We should affirm the judgment unless it appears from the evidence that the judgment is plainly wrong or without evidence to support it.  Code § 8-491."  Higginbotham v. Commonwealth, 216 Va. 349, 352, 218 S.E.2d 534, 537 (1975).  Moreover, "[i]f there is evidence to support the conviction, an appellate court is not permitted to substitute its own judgment for that of the finder of fact, even if the appellate court might have reached a different conclusion."  Commonwealth v. Presley, 256 Va. 465, 466, 507 S.E.2d 72 (1998).  Code § 18.2-80 provides, in pertinent part, that "any person [who] maliciously . . . burn[s] . . . or cause[s] to be burned or destroyed . . . any building . . . or other structure . . . at a time when no person is in such building, or other structure, and such building, or other structure, with the property therein, be of the value of $200, or more, he shall be guilty of a Class 4 felony."

To support a conviction under Code § 18.2-80, "[t]he Commonwealth had the burden to prove beyond a reasonable doubt both that the fire was incendiary and that the accused was the criminal agent."  Marable v. Commonwealth, 27 Va. App. 505, 510, 500 S.E.2d 233, 235 (1998).  "Although fires are presumed to be

-

accidental, that presumption is rebuttable."  Id.  See also Knight v. Commonwealth, 225 Va. 85, 89, 300 S.E.2d 600, 601-02 (1983).

Jefferson denies that she started the fire, but in the alternative, states that she might have accidentally started the fire by dropping the cigarette butt.  However, Agent Adams testified that the fire began in the back of the shed, not in the front.  He also testified that the fire could not have been started by a cigarette butt.

Furthermore, the circumstances proven by the Commonwealth established that Jefferson was at the location of the shed, alone and out of sight of any witness, only minutes before the fire started.  Jefferson was admittedly angry at Haskins because he would not let her see her daughter.  Jefferson displayed this anger by intentionally denting the car just after leaving the shed.  Moreover, Jefferson admits that she was smoking just before she went to the shed and after.  Certainly it would be reasonable for a fact finder to infer that at the time she went to the shed, she had in her possession something which would allow her to light the cigarette, be it a match or a lighter.

The presumption of accident, as claimed by Jefferson, was clearly rebutted by the expert testimony of Agent Adams.  "With 'the testimony of a qualified expert . . . negat[ing] every reasonable possibility that a fire was of accidental origin,' the fact finder was entitled to reject any conflicting evidence

-

relative to accidental cause."  Marable, 27 Va. App. at 510, 500
S.E.2d at 236.  "Whether the origin of a fire was accidental or
incendiary is a question of fact, and resolution of that
question may, and often must, turn upon the weight of
circumstantial evidence."  Knight, 225 Va. at 89, 300 S.E.2d at
602.

"Circumstantial evidence is as competent and is entitled to
as much weight as direct evidence, provided it is sufficiently
convincing to exclude every reasonable hypothesis except that of
guilt.  [T]he Commonwealth need only exclude reasonable
hypotheses of innocence that flow from the evidence, not those
that spring from the imagination of the defendant.  Whether a
hypothesis of innocence is reasonable is a question of fact."
Marable, 27 Va. App. at 510, 500 S.E.2d at 235 (1998) (citations
omitted).  Further, it is well settled that "[t]he credibility
of a witness and the inferences to be drawn from proven facts
are matters solely for the fact finder's determination.  In its
role of judging witness credibility, the fact finder is entitled
to disbelieve the self-serving testimony of the accused and to
conclude that the accused is lying to conceal his guilt."  Id.
at 509-10, 500 S.E.2d at 235 (citations omitted).

Considering the evidence in the light we must, we hold that
it was sufficient to prove beyond a reasonable doubt that the

-

fire was incendiary in nature and that Jefferson was the
criminal agent.

                                              <u>Affirmed.</u>