UNPUBLISHED

COURT OF APPEALS OF VIRGINIA

Present:   Chief Judge Huff, Judge Humphreys and Senior Judge Bumgardner
Argued at Salem, Virginia


MICHAEL WAYNE STALLINGS

MEMORANDUM OPINION[*] BY
v.        Record No. 1687-14-3          JUDGE ROBERT J. HUMPHREYS
NOVEMBER 10, 2015

COMMONWEALTH OF VIRGINIA


FROM THE CIRCUIT COURT OF THE CITY OF DANVILLE
Joseph W. Milam, Jr., Judge

M. Lee Smallwood, II, Senior Assistant Public Defender, for
appellant.

Christopher P. Schandevel, Assistant Attorney General (Mark R.
Herring, Attorney General, on brief), for appellee.


Michael Wayne Stallings ("Stallings") appeals his conviction from the Circuit Court of

the City of Danville (the "circuit court") of felony possession of oxycodone in violation of Code

§ 18.2-250.  Stallings claims the circuit court erred in convicting him of possession of oxycodone

because the evidence was not sufficient to prove that he was aware of the nature and character of

the item possessed as a controlled substance.

When the sufficiency of the evidence is challenged on appeal, this Court "must examine

the evidence that supports the conviction and allow the conviction to stand unless it is plainly

wrong or without evidence to support it."  Vincent v. Commonwealth, 276 Va. 648, 652, 668

S.E.2d 137, 139-40 (2008).  The relevant inquiry is whether "'any rational trier of fact could

have found the essential elements of the crime beyond a reasonable doubt.'"  Kelly v.

Commonwealth, 41 Va. App. 250, 257, 584 S.E.2d 444, 447 (2003) (*en banc*) (quoting Jackson

---

[*] Pursuant to Code § 17.1-413, this opinion is not designated for publication.

v. Virginia, 443 U.S. 307, 319 (1979)). This Court's deference to the fact finder "applies not only to findings of fact, but also to any reasonable and justified inferences the fact-finder may have drawn from the facts proved." Sullivan v. Commonwealth, 280 Va. 672, 676, 701 S.E.2d 61, 63-64 (2010). "'Circumstantial evidence is as competent and is entitled to as much weight as direct evidence, provided it is sufficiently convincing to exclude every reasonable hypothesis except that of guilt.'" Holloway v. Commonwealth, 57 Va. App. 658, 665, 705 S.E.2d 510, 513 (2011) (*en banc*) (quoting Coleman v. Commonwealth, 226 Va. 31, 53, 307 S.E.2d 864, 876 (1983)). "Circumstantial evidence is not viewed in isolation." Commonwealth v. Hudson, 265 Va. 505, 514, 578 S.E.2d 781, 786 (2003). "While no single piece of evidence may be sufficient, the 'combined force of many concurrent and related circumstances, each insufficient in itself, may lead a reasonable mind irresistibly to a conclusion.'" Derr v. Commonwealth, 242 Va. 413, 425, 410 S.E.2d 662, 669 (1991) (citations omitted).

Code § 18.2-250 makes it unlawful "for any person knowingly or intentionally to possess a controlled substance unless the substance was obtained directly from, or pursuant to, a valid prescription or order of a practitioner while acting in the course of his professional practice." Therefore, "[i]n a prosecution for possession of a controlled substance, the Commonwealth must produce evidence sufficient to support a conclusion beyond a reasonable doubt that the defendant's possession of the drug was knowing and intentional." Young v. Commonwealth, 275 Va. 587, 591, 659 S.E.2d 308, 310 (2008). "[T]he plain language of Code § 18.2-250 requires a defendant to know that the substance he possesses is in fact a controlled substance, but that it does not require him to know precisely what controlled substance it is." Sierra v. Commonwealth, 59 Va. App. 770, 775, 722 S.E.2d 656, 658 (2012). "A defendant's knowledge of the presence and character of a drug may be shown by evidence of the acts, statements, or conduct of the accused, as well as by "other facts or circumstances" tending to demonstrate the

- 2 -

accused's guilty knowledge of the drug." Ervin v. Commonwealth, 57 Va. App. 495, 506-07, 704 S.E.2d 135, 140-41 (2011) (internal citations omitted).

It is undisputed that Stallings possessed oxycodone on his person. Therefore, the only issue before this Court is whether there was sufficient evidence to establish that Stallings had knowledge of the nature and character of the pills as a controlled substance. In support of his argument that he was unaware of the nature and character of the pills he had in his possession, Stallings relies on his own testimony at trial that he did not know the pill bottle in his pocket contained prescription pills. However, "[t]he credibility of a witness and the inferences to be drawn from proven facts are matters solely for the fact finder's determination." Marable v. Commonwealth, 27 Va. App. 505, 509, 500 S.E.2d 233, 235 (1998). "In its role of judging witness credibility, the fact finder is entitled to disbelieve the self-serving testimony of the accused and to conclude that the accused is lying to conceal his guilt." Id. at 509-10, 500 S.E.2d at 235. In this case, there is ample evidence in the record to support the circuit court's finding that Stallings's testimony was not credible.

First, Stallings admitted to providing Officer Dixon with fraudulent identification, which could reasonably lead the fact finder to conclude that Stallings was attempting to conceal his guilt. See Christian v. Commonwealth, 59 Va. App. 603, 613, 721 S.E.2d 809, 814 (2012) (holding that the trial court "could infer appellant's consciousness of guilt" as it related to his possession of crack cocaine in his pocket from the false identification he had provided to police).

Additionally, Stallings's testimony at trial was controverted by the testimony of Officers Merrill and Dixon. Stallings claimed that Officer Dixon only asked for his name once, approximately fifteen to twenty minutes after Stallings's uncle fraudulently provided Officer Merrill with Stallings's name and birth date. However, both Officers Merrill and Dixon testified that they had asked Stallings's uncle and Stallings for their names and birth dates when they first

approached the vehicle at "the same time." Officer Dixon explained that Stallings had been asked about his identity three separate times—when Officer Dixon first approached the car, after Officer Dixon discovered the pill bottle from his search of Stallings, and after Officer Merrill had run the name "Michael Wayne Stallings" through the DMV system. The circuit court explicitly credited Officer Dixon's testimony that Stallings had falsely identified himself again after Officer Dixon had found the pills in Stallings's pocket.

Finally, Stallings's contradictory testimony at trial undermined his explanation about how he came to have the pills in his possession. On brief, Stallings claims that he could have thought that the pills had come from a pharmacy, but were not "controlled substances." At trial, Stallings testified first that he was unaware of what was in the bottle. Later in his testimony, Stallings explained that he had concluded that the pills "were okay" because he had seen a list of eight to ten different medications and their usages and dosages posted in the back of his uncle's truck and had concluded, based on the list, that his uncle must have had "medical issues." The circuit court could have reasonably concluded that if Stallings was truly ignorant to the bottle's contents, it would not have been necessary for him determine the pills "were okay" before retrieving them for his uncle and carrying them on his person. Therefore, finding Stallings's testimony to not be credible, the circuit court was entitled to conclude that Stallings testified falsely "in an effort to conceal his guilt." Covil v. Commonwealth, 268 Va. 692, 696, 604 S.E.2d 79, 82 (2004). The circuit court could also "'consider whatever [it] concluded to be perjured testimony as affirmative evidence of guilt.'" Morris v. Commonwealth, 269 Va. 127, 134, 607 S.E.2d 110, 114 (2005) (quoting Wright v. West, 505 U.S. 277, 296 (1992)).

The circuit court was also presented with other evidence indicating Stallings was aware of the nature and character of the pills. First, the seven pink pills were packaged inside a plastic baggie and stuffed inside a pill bottle that did not have a label. The circuit court could

- 4 -

reasonably conclude that such packaging would make it obvious to an observer that the pills had not been packaged by a pharmacist pursuant to a prescription or doctor's order. Further, the circuit court heard evidence that a "visual examination of the physical characteristics [of the pills], including shape, color and manufacturer's markings" was consistent with the pharmaceutical preparation of oxycodone. Therefore, the circuit court could soundly infer that it would be obvious to Stallings that the pills were prescription medication, as opposed to other over the counter medicines, and that those pills had not been prepared by a pharmacy. Moreover, the circuit court noted that no explanation was offered as to why Stallings had continued to have the pills in his possession if they belonged to his uncle, who was sitting right next to him in the vehicle. See Ronald J. Bacigal, Virginia Practice Series: Criminal Offenses & Defenses, 180 (2015-16) ("When the drugs are found in the actual, physical possession of the accused . . . such possession is also evidence that the accused knew *what* he possessed."). Notably, there was no evidence that Stallings's uncle, or anyone else for that matter, had a valid prescription for oxycodone. Accordingly, the circuit court found that Stallings knew he was in possession of a controlled substance. Concluding there was sufficient evidence in the record for a reasonable fact finder to find Stallings did knowingly or intentionally possess a controlled substance in violation of Code § 18.2-250, we affirm Stallings's conviction.

Affirmed.