COURT OF APPEALS OF VIRGINIA

Present: Chief Judge Huff, Judge Humphreys and Senior Judge Bumgardner
Argued at Salem, Virginia

UNPUBLISHED

DOMINIQUE DESMOND HAMPTON

v.      Record No. 0038-15-3

COMMONWEALTH OF VIRGINIA

MEMORANDUM OPINION[*] BY
JUDGE ROBERT J. HUMPHREYS
NOVEMBER 17, 2015

FROM THE CIRCUIT COURT OF THE CITY OF DANVILLE
James J. Reynolds, Judge

Maana K. Parcham, Assistant Public Defender (Heath L. Sabin,
Assistant Public Defender, on brief), for appellant.

Steven A. Witmer, Senior Assistant Attorney General (Mark R.
Herring, Attorney General, on brief), for appellee.

Dominique Desmond Hampton ("Hampton") appeals his convictions from the Circuit

Court of the City of Danville (the "circuit court") for possession of a firearm by a violent felon in

violation of Code § 18.2-308.2, breaking and entering while armed with a deadly weapon in

violation of Code § 18.2-90, and use of a firearm in the commission of robbery in violation of

Code § 18.2-53.1, claiming the evidence was insufficient to prove the rifle he used was a real

firearm.

When the sufficiency of the evidence is challenged on appeal, this Court "must examine

the evidence that supports the conviction and allow the conviction to stand unless it is plainly

wrong or without evidence to support it." Vincent v. Commonwealth, 276 Va. 648, 652, 668

S.E.2d 137, 139-40 (2008). The relevant inquiry is whether "'any rational trier of fact could

have found the essential elements of the crime beyond a reasonable doubt.'" Kelly v.

_____

[*] Pursuant to Code § 17.1-413, this opinion is not designated for publication.

Commonwealth, 41 Va. App. 250, 257, 584 S.E.2d 444, 447 (2003) (*en banc*) (quoting Jackson v. Virginia, 443 U.S. 307, 319 (1979)). This Court's deference to the fact finder "applies not only to findings of fact, but also to any reasonable and justified inferences the fact-finder may have drawn from the facts proved." Sullivan v. Commonwealth, 280 Va. 672, 676, 701 S.E.2d 61, 63-64 (2010).

"'Circumstantial evidence is as competent and is entitled to as much weight as direct evidence, provided it is sufficiently convincing to exclude every reasonable hypothesis except that of guilt.'" Holloway v. Commonwealth, 57 Va. App. 658, 665, 705 S.E.2d 510, 513 (2011) (*en banc*) (quoting Coleman v. Commonwealth, 226 Va. 31, 53, 307 S.E.2d 864, 876 (1983)). "Circumstantial evidence is not viewed in isolation." Commonwealth v. Hudson, 265 Va. 505, 514, 578 S.E.2d 781, 786 (2003). "While no single piece of evidence may be sufficient, the 'combined force of many concurrent and related circumstances, each insufficient in itself, may lead a reasonable mind irresistibly to a conclusion.'" Derr v. Commonwealth, 242 Va. 413, 425, 410 S.E.2d 662, 669 (1991) (citations omitted).

Hampton asserts that the firearm he used was actually a BB gun, which he claims is insufficient as a matter of law to support convictions under Code §§ 18.2-308.2, 18.2-90, and 18.2-53.1.

Code § 18.2-308.2 makes it unlawful for

> any person under the age of 29 who was adjudicated delinquent as a juvenile 14 years of age or older at the time of the offense of a delinquent act which would be a felony if committed by an adult . . . to knowingly and intentionally possess or transport any firearm or ammunition for a firearm.

The Supreme Court of Virginia has interpreted the term "firearm" as it applies to Code § 18.2-308.2 to mean "any instrument designed, made, and intended to fire or expel a projectile

by means of an explosion." Armstrong v. Commonwealth, 263 Va. 573, 583, 562 S.E.2d 139, 145 (2002).

Pursuant to Code § 18.2-90, it is unlawful for a person to enter a dwelling in the nighttime or break and enter a dwelling in the daytime. The penalty for such conduct is enhanced to a Class 2 felony "if such person was armed with a deadly weapon at the time of such entry." Code § 18.2-90. "A deadly weapon is one which is likely to produce death or great bodily injury from the manner in which it is used, and whether a weapon is to be regarded as deadly often depends more on the manner in which it has been used than on its intrinsic character." Pritchett v. Commonwealth, 219 Va. 927, 929, 252 S.E.2d 352, 353 (1979) (internal quotations omitted).

Code § 18.2-53.1 provides that "it shall be unlawful for any person to use or attempt to use any pistol, shotgun, rifle, or other firearm or display such weapon in a threatening manner while committing or attempting to commit . . . robbery." The Supreme Court of Virginia held that a conviction may be sustained under Code § 18.2-53.1 "upon proof that [a] defendant employed an instrument which gave the appearance of having a firing capability, whether or not the object actually had the capacity to propel a bullet by the force of gunpowder." Holloman v. Commonwealth, 221 Va. 196, 199, 269 S.E.2d 356, 358 (1980).

In support of his argument that the gun Hampton admitted to using during the criminal acts was not a firearm, Hampton relies entirely on his own testimony that the rifle he used was actually a BB gun. However, the witness testimony describing the appearance of the gun combined with Hampton's threats to kill Kristin Morrison ("Morrison") was sufficient to support the circuit court's conclusion that the rifle was in fact a real weapon. See Redd v. Commonwealth, 29 Va. App. 256, 259, 511 S.E.2d 436, 438 (1999) (holding that a clerk's description of the object as "a long black gun" was insufficient, alone, to prove that the object

- 3 -

was a firearm; however, defendant's threat, upon presenting the weapon, to kill the clerk was an implied assertion that the object was a functioning weapon, and was sufficient to support the trial court's finding that the object was a firearm).

Both Morrison and Hampton's co-conspirator, Keshawn Trotter ("Trotter") testified that the gun Hampton used was a real rifle. Morrison described the weapon as a "large black gun" that looked like a military rifle, and Trotter explained that the gun was all black and looked like an "assault rifle." The circuit court could reasonably consider that Morrison had some familiarity with guns, having been to the gun range with her brothers and friends. Further, Trotter testified that the gun Hampton used was a real rifle, not Trotter's BB gun, as Hampton claimed. Morrison also testified that Hampton demanded, "Bitch, where the money?" while pointing the real rifle at her head. Morrison testified that she could feel the metal barrel of the rifle against her head. Trotter confirmed that Hampton had the rifle pointing at Morrison at the time he made demands for money. Hampton also threatened Morrison by stating, "I'm gonna give you to the count of ten to, you know, give me what I want, and . . . or I'm gonna shoot you." Then, Hampton proceeded to count down from ten. Taken together, the description of the weapon coupled with Hampton's threatening use of the gun is sufficient to support the circuit court's conclusion that the weapon was a real firearm. The circuit court could also conclude that Hampton's concealment of the rifle in a blanket was further indication that the weapon was real, as there would have been no need to conceal a BB gun, which Hampton could lawfully possess.

Additionally, Hampton's testimony at trial was contradicted by the testimony of both the victim, Morrison, and his co-conspirator, Trotter. "The credibility of a witness and the inferences to be drawn from proven facts are matters solely for the fact finder's determination." Marable v. Commonwealth, 27 Va. App. 505, 509, 500 S.E.2d 233, 235 (1998). "In its role of judging witness credibility, the fact finder is entitled to disbelieve the self-serving testimony of

the accused and to conclude that the accused is lying to conceal his guilt." Id. at 509-10, 500 S.E.2d at 235. There is ample evidence in the record to support the circuit court's determination that Hampton's testimony was not credible. Hampton was unable to describe the layout of Trotter's basement, even though he claimed that he retrieved Trotter's BB gun from there earlier that evening. Additionally, Hampton's claim that the weapon he used had an orange tip was directly contradicted by both Morrison and Trotter. Finally, Hampton's claims that he did not utter a word while in the house and did not strike Morrison were refuted by Morrison and Trotter.

The circuit court acknowledged the inconsistencies between the testimony of Hampton and Morrison, and expressly rejected Hampton's testimony stating, "either Ms. Morrison is not telling the truth or the defendant is not telling the truth, and based upon the evidence which the [c]ourt has heard, it's not a difficult decision for the [c]ourt to make. The [c]ourt believes Ms. Morrison beyond a reasonable doubt." The circuit court found Hampton's testimony to be a fabrication and was thus entitled to conclude that Hampton testified falsely "in an effort to conceal his guilt." Covil v. Commonwealth, 268 Va. 692, 696, 604 S.E.2d 79, 82 (2004). In rejecting the notion that Trotter's BB gun was the weapon Hampton used, the circuit court further noted, "the defendant pointed a gun at [Morrison], threatened to kill her, demanded money, initiated a count-down on a threat to shoot her . . . those are assertions of operability that I think go well beyond what is required to establish something is a firearm."

Concluding there is ample evidence in the record to support the circuit court's finding that Hampton's rifle was in fact a real firearm within the meaning of Code § 18.2-308.2, we hold that the evidence was also sufficient for the circuit court to conclude it was a deadly weapon within the meaning of Code § 18.2-90 based upon the manner in which it was used and that the

rifle had the appearance of being a firearm as required by Code § 18.2-53.1.  Accordingly, we

affirm Hampton's convictions.

Affirmed.