UNPUBLISHED

COURT OF APPEALS OF VIRGINIA

Present: Judges AtLee, Friedman and Raphael
Argued at Lexington, Virginia

AMANDA KAY YOUNG

v.       Record No. 1032-21-3

COMMONWEALTH OF VIRGINIA

MEMORANDUM OPINION* BY
JUDGE STUART A. RAPHAEL
SEPTEMBER 6, 2022

FROM THE CIRCUIT COURT OF PATRICK COUNTY
Marcus A. Brinks, Judge

William Edward Cooley for appellant.

Rebecca M. Garcia, Assistant Attorney General (Jason S. Miyares,
Attorney General, on brief), for appellee.

After being lost for several days in the woods of Patrick County, Amanda Kay Young

came upon a cabin. She looked for food and water and slept overnight on the deck. She also set

multiple fires in and around the cabin. The resulting fires caused nearly $14,000 in damage to

the cabin and burned two acres of land. Young was convicted of arson, breaking and entering,

and petit larceny—third or subsequent offense. She challenges only her arson conviction,

arguing that the fire damage was accidental. While she argued the defense of necessity in the

trial court, she does not maintain that defense here. Because there was sufficient evidence for the

trial court to conclude that Young set the fires deliberately, we affirm her arson conviction.

BACKGROUND

"In accordance with familiar principles of appellate review, the facts will be stated in the

light most favorable to the Commonwealth, the prevailing party at trial." *Gerald v.*

---

* Pursuant to Code § 17.1-413, this opinion is not designated for publication.

*Commonwealth*, 295 Va. 469, 472 (2018) (quoting *Scott v. Commonwealth*, 292 Va. 380, 381 (2016)). In doing so, we "discard" conflicting evidence and accept as "true all credible evidence favorable to the Commonwealth and all inferences that may reasonably be drawn from that evidence." *Massie v. Commonwealth*, 74 Va. App. 309, 315 (2022).

Champ Cooper owned land in Patrick County where he was completing the construction of a large cabin to be used as a vacation home. Cooper's neighbor, T.J. Meade, a state trooper, often checked on the house in Cooper's absence.

On April 6, 2020, Meade drove to Cooper's property and found that portions of it were on fire. The first fire was on the left side of the front yard, burning the grass. Meade and another neighbor cut branches from a tree and used them to smother the flames. Meade also observed a blackened circular area, about eight or ten feet to the left of the cabin, where pieces of manufactured wood had been burned. As Meade walked around to the back of the house, he saw another fire, its flames burning through the deck of the back porch. Meade entered the house and saw a spot on the main floor that had also been burned, but there were no active flames inside.

Meade called the fire department, but by the time the firefighters arrived, fire had spread to the woods and was expanding rapidly. When Cooper arrived, four or five fire trucks and several police officers were already at the scene.

Walking around his property, Cooper saw remnants of fires in the front yard, underneath the back porch, on top of the back porch, and inside the house near the kitchen. The first fire appeared to have been lit on the left side of the front yard. Flames from another fire had burned a hole in the porch deck. Inside the cabin, Cooper saw a burned area with ashes on the floor. On the back porch, he noticed that four tiles had been moved from a box downstairs and arranged in a square shape on the back deck. The tiles showed a large amount of soot, and one of them was cracked. He concluded that another fire had been set there.

By the time the emergency responders extinguished the blaze, two acres of pine trees had burned. Cooper's cabin suffered $13,964 in damage.

The fire was investigated by Patrick County Sheriff's Investigator Brian Hubbard. Hubbard documented a blackened, charred area inside the home where a fire had been lit on the floor. He photographed the fire damage and issued a report. Hubbard determined that "no petroleum distillates or accelerants [were] used to start" the fires and concluded that "it was not an incendiary fire."

Hubbard identified Young as a suspect. By then, Young was incarcerated on other charges, but Hubbard interviewed her on June 17. Young told Hubbard that she had been lost in the woods for three days when she stumbled upon Cooper's cabin. She had no phone, no way to communicate, and no food or water. Young said that she was so desperate that she drank water from a puddle with tadpoles in it. She yelled through a PVC pipe to try to catch someone's attention. Young said that she lit the fires in hope that someone would find her. She admitted to lighting two fires—one underneath the back porch and the other on top of pieces of tile flooring on the back deck. She also said that she had asked for help at a man's house nearby. That neighbor was Steven Nelson. Young mentioned that she had asked Nelson, "You couldn't see the smoke?"

At trial, Nelson testified that at about 10:00 a.m. on the morning of the fire, he saw Young walking toward him across a hay field, yelling for help. She looked very tired and appeared to have been in the woods for a few days. Nelson wanted to call the sheriff's office, but Young repeatedly asked him not to. She said that the authorities would only put her in jail. Nelson gave Young some juice and granola bars. He told her that he was going to call a deputy whether she wanted him to or not, and Young departed. The trial judge asked Nelson if Young

had said anything about setting some fires or trying to send a smoke signal (as she had claimed to Hubbard). Nelson answered, "No, not to my recollection."

Miriam Boyd, another of Cooper's neighbors, also testified. Boyd said that Young knocked on her back door on the morning of April 6, asking for something to drink. Concerned by Young's appearance, Boyd would not open her door. Young told Boyd that she had been in an argument with her boyfriend and had walked through pine trees all night. Young left after a few minutes, walking back into the woods. She did not ask Boyd to call anyone for assistance.

After the trial court denied Young's motion to strike, Young testified in her defense. She said that she had been visiting a friend's house when she took two Xanax pills and walked outside to a nearby trail to clear her mind. She fell asleep. When she awoke, it was dark. She had no phone, flashlight, or tools. Young said that she walked for days to find help until coming across Cooper's cabin. When no one answered her knock on the door, she went inside. Young screamed outside for help and made a loud noise by banging a PVC pipe against a large wooden post to draw attention. When no one came to her aid, Young said that she got discouraged. She found a survival kit in the cabin that included a few matches and a little piece of cloth. She went outside and lit a campfire, hoping someone would see the flames or smell the smoke and come to her rescue. She said that she also lit the fire for light and heat.

Young said that she found a bucket behind the cabin and took it up to the deck, where she lit a stick and dropped it in, using the bucket for light. She then walked with it through the cabin. Young claimed that the wind caused embers to fall from the bucket onto the floor. But she denied starting a fire inside the cabin.

When asked whether she knew that the fire had damaged the home, Young responded, "I knew that it had gotten some of the black char on top of the porch there and it looked like it had set and some debris had [fallen] off . . . ." Young said that two of the fires burned throughout the

night while she slept—one in the front yard and one under the porch. But she said the fires had stopped burning when she awoke the next morning. Though she did not have any water to pour on the fires, she claimed that she had made sure the fires were extinguished before she left the property.

In closing, Young's counsel argued that Young had not acted with malice in setting the fires and that her actions were excused by the defense of necessity. But the trial court was not persuaded. The court said that it had "no doubt that [Young] set fires and I don't believe her when she says, 'I didn't set a fire in the building.'" The court found that she had set fires both outside and inside. The court also noted Nelson's testimony that Young wanted to avoid any interaction with law enforcement and had said nothing about the fires when she saw Nelson on the morning of April 6.

The trial court found Young guilty of arson, in violation of Code § 18.2-77; breaking and entering, in violation of Code § 18.2-91; and petit larceny—third or subsequent offense, in violation of Code § 18.2-96. The court sentenced her to five years on each felony, with all time suspended, and ordered her to pay restitution to Cooper in the amount of $13,963.69

On appeal, Young challenges only her arson conviction.

ANALYSIS

"In reviewing a challenge to the sufficiency of the evidence, we affirm the trial court's judgment 'unless it appears from the evidence that the judgment is plainly wrong or without evidence to support it.'" *Pulley v. Commonwealth*, 74 Va. App. 104, 123 (2021) (quoting *Poole v. Commonwealth*, 73 Va. App. 357, 363 (2021)). "In such cases, '[t]he Court does not ask itself whether *it* believes that the evidence at the trial established guilt beyond a reasonable doubt.'" *McGowan v. Commonwealth*, 72 Va. App. 513, 521 (2020) (alteration in original) (quoting *Secret v. Commonwealth*, 296 Va. 204, 228 (2018)). "Rather, the relevant question is whether

- 5 -

'*any* rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt.'" *Vasquez v. Commonwealth*, 291 Va. 232, 248 (2016) (quoting *Williams v. Commonwealth*, 278 Va. 190, 193 (2009)). "If there is evidentiary support for the conviction, 'the reviewing court is not permitted to substitute its own judgment, even if its opinion might differ from the conclusions reached by the finder of fact at the trial.'" *McGowan*, 72 Va. App. at 521 (quoting *Chavez v. Commonwealth*, 69 Va. App. 149, 161 (2018)).

A person commits arson if he "maliciously . . . burns . . . in whole or in part, or causes to be burned or destroyed, . . . any dwelling house . . . whether belonging to himself or another." Code § 18.2-77(A). If the burning occurs when the home or structure is "unoccupied," the crime is a Class 4 felony. Code § 18.2-77(B). Arson "involves the destruction of property." *Schwartz v. Commonwealth*, 41 Va. App. 61, 73 (2003). To prove arson, "the Commonwealth must prove that a fire of incendiary origin occurred and that the accused was a criminal agent in the burning." *Id.*; *see also Riner v. Commonwealth*, 268 Va. 296, 328 (2004) ("To prove arson, as with any criminal charge, the Commonwealth must establish beyond a reasonable doubt both the *corpus delicti* and criminal agency."). "The amount of 'burning' necessary to be shown [in cases of arson] is any amount, provided there is a perceptible wasting of the fiber of the building or object which is a subject of arson, or some part of that building or object, by fire." *Schwartz*, 41 Va. App. at 73 (alteration in original) (quoting *Hancock v. Commonwealth*, 12 Va. App. 774, 779 (1991)).

There is no dispute that Young started the fires that burned Cooper's home and the woods around it. So her "criminal agency," *Riner*, 268 Va. at 328, is not in question. Young argues instead that she did not intend to cause the damage that occurred and that she should be exonerated because she was faced with desperate circumstances.

Incendiary means "a deliberate burning of property." *Incendiary¸ Webster's Third New International Dictionary* (2002). "Although fires are presumed to be accidental, that presumption is rebuttable." *Marable v. Commonwealth*, 27 Va. App. 505, 510 (1998). "Whether the origin of a fire was accidental or incendiary is a question of fact, and resolution of that question may, and often must, turn upon the weight of circumstantial evidence." *Riner*, 268 Va. at 328 (quoting *Knight v. Commonwealth*, 225 Va. 85, 89 (1983)). To show that a fire was incendiary—deliberately set—the prosecution may offer evidence involving the "use of accelerants, multiple points of origin[,] or discounting of accidental causes." Ronald J. Bacigal, *Virginia Practice—Criminal Offenses & Defenses*, *Arson and Bombing* A44 (II) (2021).

Two of those types of evidence were presented here. Although Hubbard's investigation found that no accelerants were used, multiple fires had been set. What is more, Young admitted to having set at least two of the fires. Although she denied also having set a fire on the floor inside Cooper's cabin, the trial court did not believe her.

Next, Young insists that she did not act "maliciously," a statutory requirement to be convicted of arson. Code § 18.2-77(A). She denies that she acted out of ill will, claiming that she "started a campfire for the stated purposes of warmth, light and to signal for help."

"[M]alice inheres in the doing of a wrongful act intentionally, or without just cause or excuse, or as a result of ill will." *Hamm v. Commonwealth*, 16 Va. App. 150, 153 (1993) (alteration in original) (quoting *Bell v. Commonwealth*, 11 Va. App. 530, 533 (1991)). "[I]n the case of arson, [malice] is not necessarily a feeling of ill will toward another person, but may be a purposeful intent to do a wrongful act." *Id.* at 154. "At common law, 'maliciously' included reckless as well as intentional burnings. Thus if one is fully aware that his conduct creates a grave risk that a dwelling place will be burned, and proceeds with the conduct, and causes the result, he is punishable under [Code § 18.2-77]." Bacigal, *supra*, A44 (III)(B).

There was sufficient evidence here to show that Young intentionally started fires that she knew or must have known would result in damage to the cabin. Young set four separate fires that burned two acres of pine trees and caused nearly $14,000 in damage to the cabin. She admitted to using matches and gathering materials to start a fire. She made a fire on the main floor of the cabin even though the cabin had a fireplace. Two of the fires were still burning when Meade arrived, which supports the inference that they were burning when Young left the property.

Young's claim that she set the fires to signal for help is also inconsistent with her behavior when she encountered Nelson and Boyd. Nelson testified that Young pleaded with him not to call the sheriff's office. And when Young knocked on Boyd's door, she did not ask her to call anyone for help. Although Young testified that she set the fires out of desperation, rather than to damage the cabin, the trial court was "entitled to disbelieve the self-serving testimony of the accused and to conclude that the accused [was] lying to conceal [her] guilt." *Marable*, 27 Va. App. at 509-10.

Finally, we note the change in Young's litigation position here from her position in the trial court. Young argued at trial that her conduct was justified by "necessity." That affirmative defense is typically invoked "when physical forces beyond the actor's control render 'illegal conduct the lesser of two evils.'" *Buckley v. City of Falls Church*, 7 Va. App. 32, 33 (1988) (quoting *United States v. Bailey*, 444 U.S. 394, 410 (1980)).[1] Young does not assign error,

---

[1] For example, "[i]f one who is starving eats another's food to save his own life, the defense of necessity may bar a conviction for the larceny of the other's food." *Buckley*, 7 Va. App. at 33. To prevail on this affirmative defense, however, Young had to meet her production burden to show (1) that she had a "reasonable belief" that setting the fires was "necessary to avoid an imminent threatened harm;" (2) that she lacked "other adequate means to avoid the threatened harm;" and (3) that setting the fires could be "reasonably anticipated" to avoid that harm. *Edmonds v. Commonwealth*, 292 Va. 301, 306 (2016) (quoting *Humphrey v. Commonwealth*, 37 Va. App. 36, 45 (2001)).

however, to the trial court's rejection of her necessity defense. Because we are limited to considering "arguments encompassed by an appellant's express 'assignment of error,'" *Ceres Marine Terminals v. Armstrong*, 59 Va. App. 694, 698 n.1 (2012), we cannot consider whether the court properly rejected that affirmative defense. *See* Rule 5A:20(c). And Young may not sidestep her failure to assign error to that ruling by repacking the same argument as a general claim that she did not start the fire deliberately or maliciously. *See Riddick v. Commonwealth*, 72 Va. App. 132, 146 (2020) ("[W]e cannot recast the assignment of error to allow [the appellant] to make a different argument.").

## CONCLUSION

We find no error in the trial court's conclusion that Young committed arson when she deliberately started multiple fires near and inside Cooper's cabin.

*Affirmed.*