COURT OF APPEALS OF VIRGINIA

Present: Judges Friedman, Callins and White
Argued at Salem, Virginia

**UNPUBLISHED**

RICHARD LEE EVANS, II

                                   MEMORANDUM OPINION[*] BY
v.      Record No. 0817-22-3           JUDGE DOMINIQUE A. CALLINS
                                       MAY 23, 2023

COMMONWEALTH OF VIRGINIA

FROM THE CIRCUIT COURT OF PATRICK COUNTY
Marcus A. Brinks, Judge

Jason S. Eisner for appellant.

Susan Hallie Hovey-Murray, Assistant Attorney General (Jason S.
Miyares, Attorney General; John Beamer, Assistant Attorney
General, on brief), for appellee.

The trial court convicted Richard Lee Evans, II, of assault and battery. On appeal, Evans

contends that the evidence is insufficient to support his conviction. Finding no error, we affirm the

judgment of the trial court.

---

[*] This opinion is not designated for publication. *See* Code § 17.1-413.

BACKGROUND[1]

M.K.[2] lived with Evans and their young daughter in Patrick County. On the evening of January 23, 2019, M.K. was home with family friends Nick Morris and Maria Carmen DeLeon.[3] Evans arrived home around 9:00 p.m. M.K. testified that Evans appeared intoxicated, noting that he, when intoxicated, would become mad and have an "'in your face' kind of attitude." After he arrived home, M.K. asked Evans for money to reimburse DeLeon for the gas DeLeon would use driving her to the dentist the next day. Evans angrily threw $50 in cash at M.K., saying, "Fuck. Why don't you take all of my money?"

After a while, Evans told M.K. that she had three seconds to return the money he had thrown at her. As Evans counted down aloud, he approached M.K. and "went for" her "sweatshirt and . . . pocket." Reacting to his approach, M.K. stepped backward, tripped into a cedar chest behind her, and landed between the chest and the coat rack. Evans grabbed M.K. by her sweatshirt collar and "put [her] down." He then sat on top of her "lap," straddling her. Evans pressed on the bottom of M.K.'s neck with his hands, pushing her further down, while telling her, "You need to calm down." M.K. had difficulty breathing, pleading to Evans, "Get off of me. Get off of me." At some point, their young daughter jumped on Evans's back and exclaimed, "Stop hurting mom."

---

[1] "In accordance with familiar principles of appellate review, the facts will be stated in the light most favorable to the Commonwealth, the prevailing party at trial." *Poole v. Commonwealth*, 73 Va. App. 357, 360 (2021) (quoting *Gerald v. Commonwealth*, 295 Va. 469, 472 (2018)). In doing so, we discard any of Evans's conflicting evidence, and regard as true all credible evidence favorable to the Commonwealth and all inferences that may reasonably be drawn from that evidence. *Gerald*, 295 Va. at 473.

[2] We use initials, rather than the victim's name, to guard her privacy. *See Poole*, 73 Va. App. at 360 n.1.

[3] At trial, Maria Carmen DeLeon was referred to as both "Mary Carmen" and "Mary DeLeon." However, she identified herself as "Maria DeLeon."

M.K. testified that throughout this episode, Evans was "angry." Evans finally let M.K. go after she "just stopped moving." After, M.K. experienced soreness in her neck and chest.

M.K. tried to leave the house with their daughter. She asked Morris, who had left the house and returned right after the confrontation,[4] to drive her and her daughter to his mother's house. As they started to leave, Evans pushed M.K. down on the front porch steps, causing her to fall onto the steps. When Patrick County Sheriff's Office Investigator Jessup arrived on the scene, she observed a scratch on M.K.'s lower neck, a cut on her knee, and mud on her pants.

DeLeon and Morris testified for Evans. They both denied seeing any physical altercation between Evans and M.K., but they acknowledged that the two argued about money. DeLeon testified that she saw M.K. on the living room floor "asking for her inhaler" and that she saw Evans sitting on the cedar chest; DeLeon denied seeing Evans sitting on M.K. On rebuttal, the Commonwealth recalled Patrick County Sheriff's Office Investigators Tejeda and Jessup. Investigator Tejeda testified that when he spoke with DeLeon she disclosed that "Mr. Evans was in the wrong," that Evans "did take [M.K.] down to the ground and assault her," that she saw Evans on top of M.K., and that Evans was "aggressive." Investigator Jessup also testified that DeLeon told her "she [M.K.] would end up hurt worse" if she remained in the house with Evans. Both investigators testified that DeLeon stated that M.K. "did not assault" or "put hands on" Evans.

Evans admitted that he and M.K. argued and that he had consumed "half of a six-ounce beer" about an hour and a half before he came home. According to Evans, after telling M.K. she had "five seconds to give me my money or I am going to take it," M.K. lunged towards him, so he "deflected her." He claimed that M.K. then lost her balance and that he grabbed her by her coat to prevent her from falling into the furniture. Evans also testified that, after M.K. claimed to be

---

[4] Morris testified that although he had left that evening to go to the store for beer, he "went to the closest store," and was gone for approximately fifteen minutes.

struggling to breathe, he directed their daughter to fetch M.K.'s inhaler. Evans acknowledged telling M.K., "I don't care if you choke to death." Evans testified that he called 911. By Evans's account, M.K. fell down the porch steps when she left the house with their daughter. Evans testified that earlier in the night M.K. had kicked him and hit him in the back of the head.

Evans moved to strike both at the conclusion of the Commonwealth's evidence and at the conclusion of his case-in-chief. Among other things, Evans argued that the evidence did not support the strangulation charge. He argued simultaneously that "at most" his conduct "rises to the level of assault and battery" and that, because he touched M.K. to "prevent her from not hitting her head," his conduct did not "rise to the level of assault and battery . . . or otherwise touching." The trial court rejected Evans's testimony, concluding that Evans "was upset," grabbed M.K., and "put her to the ground." However, the trial court convicted Evans of the lesser-included offense of assault and battery. Evans appeals.

ANALYSIS

I. Standard of Review

"When reviewing the sufficiency of the evidence, '[t]he judgment of the trial court is presumed correct and will not be disturbed unless it is plainly wrong or without evidence to support it.'" *Smith v. Commonwealth*, 296 Va. 450, 460 (2018) (alteration in original) (quoting *Commonwealth v. Perkins*, 295 Va. 323, 327 (2018)). "In such cases, '[t]he Court does not ask itself whether *it* believes that the evidence at the trial established guilt beyond a reasonable doubt.'" *Secret v. Commonwealth*, 296 Va. 204, 228 (2018) (alteration in original) (quoting *Pijor v. Commonwealth*, 294 Va. 502, 512 (2017)). "Rather, the relevant question is, upon review of the evidence in the light most favorable to the prosecution, whether *any* rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt." *Id.* (quoting *Pijor*, 294 Va. at 512). "If there is evidentiary support for the conviction, 'the

reviewing court is not permitted to substitute its own judgment, even if its opinion might differ from the conclusions reached by the finder of fact at the trial.'" *Chavez v. Commonwealth*, 69 Va. App. 149, 161 (2018) (quoting *Banks v. Commonwealth*, 67 Va. App. 273, 288 (2017)).

## II.  The trial court did not err in convicting Evans of assault and battery.

Evans's challenge to the trial court's judgment is premised on the contention that because "he was not intoxicated enough to cast doubt on his recollections of that night," his testimony alone, and not that of M.K., should be credited as true.  Evans argues that "the evidence established that [M.K.] was the initial aggressor and any contact made by . . . Evans was for the sole purpose of protecting her from harm."  We disagree and hold that the evidence was sufficient to sustain Evans's assault and battery conviction.

"Assault and battery are common law crimes." *Kelley v. Commonwealth*, 69 Va. App. 617, 625 (2019) (quoting *Montague v. Commonwealth*, 278 Va. 532, 541 (2009)).  "Placing an individual in reasonable apprehension of bodily harm constitutes an assault." *Id.* (citing *Parish v. Commonwealth*, 56 Va. App. 324, 330-31 (2010)).  That is, "[t]o sustain a conviction for assault, the Commonwealth must prove 'an attempt or offer, with force and violence, to do some bodily hurt to another.'" *Parish*, 56 Va. App. at 329 (quoting *Adams v. Commonwealth*, 33 Va. App. 463, 468 (2000)).  The crime of assault and battery couples such an offer with the "'wil[l]ful or unlawful touching' of another." *Id.* at 330 (alteration in original) (quoting *Wood v. Commonwealth*, 149 Va. 401, 404 (1927)).  Further, the offer and the unwanted touching must be bound with an intent to do bodily harm. *Id.*  "The unlawful intent may be imputed if the touching 'is done in a rude, insolent, or angry manner.'" *Id.* at 331 (quoting *Adams*, 33 Va. App. at 469).

In addition, "determining the credibility of the witnesses and the weight afforded the testimony of those witnesses are matters left to the trier of fact, who has the ability to hear and

see them as they testify." *Maldonado v. Commonwealth*, 70 Va. App. 554, 562 (2019) (quoting *Miller v. Commonwealth*, 64 Va. App. 527, 536 (2015)). "[T]his Court must accept 'the trial court's determination of the credibility of witness testimony unless, "as a matter of law, the testimony is inherently incredible."'" *Canada v. Commonwealth*, 75 Va. App. 367, 386 (2022) (quoting *Nobrega v. Commonwealth*, 271 Va. 508, 518 (2006)). "[W]e may only disturb the trial court's credibility determination if the evidence is 'inherently incredible, or so contrary to human experience as to render it unworthy of belief.'" *Lopez v. Commonwealth*, 73 Va. App. 70, 84 (2021) (quoting *Kelley*, 69 Va. App. at 626). Further, "[i]n its role of judging witness credibility, the fact finder is entitled to disbelieve the self-serving testimony of the accused and to conclude that the accused is lying to conceal his guilt." *Flanagan v. Commonwealth*, 58 Va. App. 681, 702 (2011) (quoting *Marable v. Commonwealth*, 27 Va. App. 505, 509-10 (1998)).

Evans admitted that he and M.K. argued and that he touched her during the episode. The trial court permissibly rejected Evans's claims both that M.K. initiated the fight and that Evans touched M.K. for her own protection and benefit. Instead, the trial court accepted M.K.'s testimony that Evans angrily "put her to the ground." *See Flanagan*, 58 Va. App. at 702. M.K.'s testimony established that Evans, in anger, grabbed M.K. and put her on the floor, injuring her.

Although neither Morris nor DeLeon testified to observing physical contact between Evans and M.K., DeLeon did testify that she was in the kitchen, and acknowledged that she saw M.K. "at some point on the floor" and "heard her saying that she couldn't breathe and asking for her inhaler." DeLeon's testimony at trial was sharply at odds with the account she had provided to investigators. Morris acknowledged that he was not "with them all the time," having gone to the store briefly that night for beer. While Evans argues that both witnesses "testified that they had been present at the time and did not observe any physical contact at all," the task of weighing their testimony, and resolving any potential inconsistencies between testimony provided by witnesses, belonged to the

trial court.  This Court, which sits at a remove from the record, cannot reweigh the evidence, substituting its judgment for that of the trial court.  *See Maldonado*, 70 Va. App. at 562.

Accordingly, the evidence presented at trial was sufficient to prove beyond a reasonable doubt that Evans committed an assault and battery, having willfully and angrily touched M.K.

CONCLUSION

For the foregoing reasons, we affirm the judgment of the trial court.

*Affirmed.*